UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RODNEY GRUBBS, | ) | Case No. 23-05593-JJG-7A |
|                 Debtor. | ) | |
| _____ | ) | |
| | ) | |
| CONNIE ADAMS, MARK ADAMS, SANJIV AGGARWAL, TERESA AMICK, LARRY AMICK, WAYNE AMRHEIN, LYNNE AMRHEIN, DIANE AZAR, PETER BASSEL, RUTH BAUERLE, ROBERT BAUERLE, SANDRA M. BECKETT, KATHRYN BIARKIS, ROBERT BIARKIS, MARCO BIGGS, JOE BISCHOFF, DORIS BISCHOFF, GARY BISCHOFF, GLEN R. BISCHOFF, TINA BISCHOFF, SUSAN BORREGO, DENISE BOUTIN, JILL BRACK, ABIGAIL BRANDENBERGER, BETTY BRANDENBERGER, JON BRANDENBERGER, MATTHEW J. BRANDENBERGER, JENNIFER BUTLER, CAROL CAPION, HELEN CARLSON, RICHARD CARLSON, APRIL CARPENTER, RAYMOND CARPENTER, MICHAEL KEVIN CARVER, JULIE CARVER, MICHAEL C. CHAPIN, VIRGINIA B. CHETTA, GREGORY E. CHETTA, WILLIAM CIFERRI, CATHY CIFERRI, ELDONNA COATS, MICHAEL COATS, STEPHEN COLE, JEFF CONRADI, THOMAS COONEY, JANA S. CORBIN, DOUGLAS C. CORBIN, MICHAEL CRABTREE, SANDRA CRABTREE, KEN CURRY, PATTY CURRY, MARK A. DALY, DIANA M. DALY, ROB DAVIDSON, SHONDA DAVIDSON, TERESA L. DEAKIN, BONNIE DEAN, RUDOLPH DEAN, REBECCA L. DEHENNIS, ANDREW C. DEHENNIS, CHERILYN DRAKE, LESLIE DRAKE, JANICE S. DUPRE, GARY W. DUPRE, SANDY EINHAUS, JOHN EINHAUS, DANIEL ELLSWORTH, ANDREW EVANS, PATRICIA GALLEGOS, AARON GARZA, DARIO GARZA, JOE HUNTER GILMORE, CAROLINE GILMORE, GRACE RITZMAN REVOCABLE TRUST, BRENDA GREEN, FRANCIS GREEN, RICHARD J. GRIFFITH, MARY ELLYN GRIFFITH, KELLI GRIMES, GREG L. GRIMES, GERALDINE L. GRODZINSKY, GEORGE C. GROSS, JR., SHARON | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Adversary No. _____ |

L. GUINGRICH, JOHN GULLO, CRAIG HALEY, )
PAULA J. HANDRUP, JACK HANDY, LYNN )
HANDY, MARILYN HASLUP, THOMAS HASLUP, )
MARILYN HEDRICK, JEAN MARIE HEFFRON, )
TIMOTHY PAUL HEFFRON, SUSAN )
HENDERSON, TERRY HENDERSON, KEITH )
HENSEL, RONALD HENSEL, GREG HILLIGOSS, )
PAM HILLIGOSS, DAVID HITESHEW, MARY )
HITESHEW, MARILYN JEAN HOLLADAY, )
KAREN J. HONEYCUTT, LARRY L HONEYCUTT, )
ROBERTA S. HOOKER, WALTER C HOOKER, )
RICHARD HORNBUCKLE, LORNA )
HORNBUCKLE, KEVIN HUFF, ERIC HURST, )
SANDI HURST, CARLA LYNN INGRAM, KEVIN )
INGVALSON, ANDREA INGVALSON, GRACE )
JAWORSKY, LISA KARSTEN, EDWARD A. )
KARSTEN JR, ROBERT MARK KELLAM, JOAN )
FRANCIS KELLAM, DAVE KERSEY, CRAIG KING, )
JANE A. KING, ERIC KINGSLEY, KATHERINE )
KINGSLEY, JASON KORNREICH, SHAWN )
KORNREICH, EVELYNE KORNREICH, ELLIOT )
KORNREICH, JAMIE WILLHELM KOVATCH, )
DENISE KRAMER-COLE, RACHAEL KROOG, )
VIRGIL KUNKEL, BERNADINE KUNKEL, )
SHARON KVISTAD, WILLIAM KVISTAD, PENNY )
LAKOFF, TIM LAKOFF, AARON LAMPORT, )
CAROL LAMPORT, NANCY LAMPORT, NORMA )
LAMPORT, KYLE LARAMIE, RACHEL LARAMIE, )
BARB LEFFINGWELL, JULIANA LEHMAN, )
RICHARD LEHMAN, ANDY LEIGHTON, RANDI )
LEVENBAUM, BRANCH R. LEW, MARCIA E. )
LEW, ROBERTA B. LITTLE, HEIDI LOUIS, )
GERALD LOUIS, JACK LOVINS, SUE LOVINS, )
JUDITH A. MAHURON, STEPHEN L. MAHURON, )
JAMES MARINO, LEONA S. MARINO, LEONARD )
B. MARINO, JEFF MATHEWS, ROBERT )
MCCARTHY, LEVI MCCASHLAND, CORINNE )
MCCRAY, STEPHANIE MCDONALD, JEANINNE )
MCKINNA, DAN MCLAUGHLIN, KATHLEEN )
MCLAUGHLIN, CHARLES A. MITCHELL, )
FLORIN MOLNAR, MARTHA MULLIN, KEVIN )
MURPHY, JANE MURPHY, MICHAEL MURPHY, )
CLARK E. NEAL, KAREN NIEDENTHAL, KAREN )
S. O'HARE, RANDALL S. O'HARE, CHARLES )
OGLESBY, LORETTA OGLESBY, ERIN )
OVERHOLT, RYAN OVERHOLT, KENNETH )
PALMER, SANDRA PALMER, GUY PASELA, )
MARIAN PASELA, LARRY PECK, DEBBIE PECK, )

2

| | |
|---|---|
| PHIL PICHE, SHANNON PIERCE, RONALD PONDER LIVING TRUST, PETER POPOVICH, VIRGINIA POPOVICH, DIRK PRUIS, DAN PURCELL, STACY PURCELL, DONALD QUIRION, LINDA QUIRION, PATRICIA A. RATHBURN, KEVIN M. REED, CHRISTOPHER REISERT, EMILY REISERT, ANNE RHEINS, TODD RHEINS, SHARON RICHARD, RAYWOOD RICHARD, DEBORAH ANN RICHTER, ROBERT E ROMAGOSA, IRENE ROMAGOSA, MARY SACKSTEDER, SCOTT SCHIRMER, DALE F. SCHNARR, TERI L. SCHNARR, MICHAEL SCHWEGMAN, AMANDA SCHWEGMAN, KATHY SHELLY, SCOTT SIEWERT, TERI SIEWERT, CHERYL SILVERMAN, LAWRENCE SILVERMAN, DALE SLOAN, ROBERT SMUTKA, ST. LOUIS PICKLEBALL LLC, SHERRI STEINHAUER, KAROLYN STIPECK, BETTY SULLIVAN, GEORGE SUNDRUP, GEORGE SUNDRUP, MIKE TAFELSKI, PATRICK TAFELSKI, RITA TAFELSKI, SHAUNNA TAFELSKI, CHIEN TANG, STEVEN G TAYLOR, FRED THOMPSON, IAN TITUS, BYNUM TUTTLE JR., ROBERT M UNETICH, POLLY UNGER, JOHN URBAN, JANET URBAN, ALAN VOHS, JACKIE VOHS, BETTESUE WACHHOLZ, JOHN R WACHHOLZ, SHANE WATSON, HOWARD WEISBART, BRYAN WENTZ, BILL WERNER, EMMA WERNER, PATRICK V. WHELAN, PATTY ANN WHELAN, HELEN WHITE, NANCY WHITEMAN, ANNETTE WILLHELM, DAVID WILLHELM, WILLHELM BROTHERS FARMS LLC, CAROL RENE WILSON, WILSON'S GAME ON, LLC, ELLEN BEATRICE WINDJACK, JAYSON WINDJACK, GREG WOODSUM, and MELODY WOODSUM, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| RODNEY GRUBBS, | ) ) |
| Defendant. | ) |

**COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §§ 523(a)(2), 523(a)(4), 523(a)(6), AND 523(a)(19)**

3

<u>COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT
PURSUANT TO 11 U.S.C. §§ 523(a)(2), 523(a)(4), 523(a)(6), AND 523(a)(19)</u>

Plaintiffs, by counsel, object to any discharge of debts owed to them by Rodney Grubbs ("Debtor" or "Grubbs"), and for their "Complaint to Determine Non-Dischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(2), 523(a)(4), 523(a)(6) and 523(a)(19)" ("Complaint") state as follows:

<u>Jurisdiction and Parties</u>

1. This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b). Each Plaintiff consents to entry of final orders and judgment by the bankruptcy court.

2. Defendant is Debtor in a case under Chapter 7 of Title 11 of the United States Code. The case started with an involuntary petition filed December 17, 2023 and is now pending in this Court as Case No. 23-05593.

3. Each Plaintiff is an unsecured creditor of the Debtor who has filed a claim in this case.

4. Joinder of the Plaintiffs is proper under Fed. R. Bankr. P. 7019 and Fed. R. Civ. P. 19 because (a) each Plaintiff claim an interest relating to the subject of the action and is so situated that disposing of the action in such Plaintiff's absence may, as a practical matter, impede or impair Plaintiff's ability to protect that interest, (b) if any Plaintiff is absent, the court cannot accord complete relief among the remaining parties, and (c) joinder of these Plaintiffs will not deprive the court of subject matter jurisdiction.

5. Alternatively, joinder of the Plaintiffs is proper under Fed. R. Bankr. P. 7020 and Fed. R. Civ. P. 20, because the Plaintiffs assert rights to relief jointly and/or severally with respect to or arising out of the same series of transactions or occurrences, i.e., Grubbs' years-long investment scheme, and numerous questions of law and fact common to all Plaintiffs will arise in the case.

4

6. This action is an adversary proceeding pursuant to 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 523(a)(6) to object to and determine the non-dischargeability of certain indebtedness of the Debtor to Plaintiffs.

7. This Complaint is timely, having been filed by the August 23, 2023 deadline for objecting to discharge and filing a complaint to determine dischargeability of debt.

## Factual Background

8. For more than twenty years until the end of 2023, Grubbs ran a fraudulent investment scheme that ultimately robbed millions of dollars from hundreds of people. Plaintiffs in this case represent a large segment of the victims of Grubbs' investment scheme.

9. For roughly the first ten years of the scheme, i.e., until about 2013, Grubbs lured people to "invest" in a purported enterprise with the stated purpose of buying homes, renovating them, and renting or selling them to generate a return. Grubbs persuaded a number of people – starting with his family and neighbors in Brookville, Indiana – to invest varying amounts of money for the explicit and sole purpose of funding his purchase and renovation of those homes.

10. Grubbs told each investor that their money would be used solely to fund his buying, renovating, and selling of homes to generate revenue and, in turn, a return for investors. Every such statement was a lie. On the contrary, Grubbs always intended to and did convert and misuse investor funds to finance his and his family's lives, pay bills, and acquire personal assets.

11. Sometime around 2013, Grubbs became very involved with pickleball, a new sport that was rapidly growing in popularity at the time. Grubbs plunged into the sport, playing and teaching pickleball in Brookville and elsewhere and traveling to tournaments around the country.

12. During roughly this same period, Grubbs started a pickleball apparel and equipment company called "Pickleball Rocks," which was a d/b/a of an entity called "All About Pickleball, LLC" created and solely owned by Grubbs. Grubbs began promoting Pickleball Rocks at dozens of

5

tournaments around the country and through sponsorships of pro players. In a few years Grubbs started claiming that Pickleball Rocks had become the industry leader in pickleball apparel.

13. In addition to regularly playing, Grubbs routinely bought vendor space to sell and promote Pickleball Rocks apparel and equipment at tournaments around the country. Through Pickleball Rocks, playing, traveling to tournaments, and even starting a YouTube channel, Grubbs (who calls himself "Rocket") became a well-known personality in the national pickleball community. Grubbs projected a sense of pickleball expertise with a folksy and down-home demeanor, and generated trust with hundreds of pickleball players and enthusiasts.

14. Concurrent with his plunge into pickleball in or before 2013, Grubbs changed the stated purpose of his fraudulent investment scheme. Grubbs effectively abandoned seeking money for real estate and renovation and shifted to soliciting "investment" for Pickleball Rocks. Grubbs primarily targeted pickleball players as new "investors" in his enterprise, using the same sales pitch and methods he had previously used for his real estate scam. This change proved quite successful for Grubbs and generated millions of new "investment" dollars over the next decade.

15. As with the real estate phase of his scheme, Grubbs told each Pickleball Rocks investor that their money would be used solely to fund and support the business, which would generate revenue and, in turn, create returns for the investors. Every such statement was a lie. In fact, Grubbs always intended to and did convert and misuse investor funds to finance his and his family's lives, pay bills, and acquire personal assets.

16. Each Plaintiff who was victimized at any time by Grubbs' fraudulent investment scheme was defrauded the same way. Grubbs approached a person preselected or referred to him as a possible investor (the "mark"). He then offered the person an investment "slot" in his enterprise, representing that only six slots existed and, accordingly, the enterprise had just six investors in all. Once into his pitch, Grubbs used high-pressure tactics to secure the money, emphasizing how the

6

investor could not miss this great opportunity, and declaiming how important the investment would be for the enterprise.

17. In securing an investment, Grubbs insisted that the new investor tell no one else about the investment, because others not approached might be jealous or upset about the missed investment opportunity. Grubbs also urged that confidentiality was best served if no investor knew the identity of any other investor, or words to that effect.

18. Grubbs' stated reasons for wanting secrecy were lies. In fact, Grubbs needed his investors' secrecy to keep his fraudulent scheme from being discovered. This veil of silence enabled Grubbs to continue taking money from larger and larger numbers of people (ultimately, hundreds), while convincing each investor that he or she was a member of a very small and exclusive six-person investment group.

19. Grubbs' fraudulent methods for taking his victims' money and documenting their "investments" never changed. The investor agreed to pay Grubbs a stated amount, usually by wire transfer to a bank account owned and controlled by Grubbs. In exchange, Grubbs gave each investor a very basic, short-term personal promissory note for the amount of the investment. These notes were extremely similar and all contained at least some identical boilerplate language. The notes typically ranged between 6 and 18 months in length and promised annual returns ranging from 10% to 20%.

20. Though Grubb's promissory notes sometimes mentioned Pickleball Rocks or a particular parcel of realty, every dollar he secured from a victim went into his own bank accounts. Some small portion of the "investment" might find its way to the target enterprise, but most of the money was used to fund Grubbs' and his family's lives, expenses, and asset purchases. Grubbs also used new "invested" money to pay earlier investors a so-called "return" in a clear example of a classic Ponzi scheme.

21. Grubbs never paid the vast majority of his promissory notes. Typically, when a note matured Grubbs would convince the investor to "roll it over," meaning that the investment – on paper but not in actual funds – would continue to grow in value. When an investor did not want or no longer wanted to roll over a note, Grubbs on rare occasions would pay the debt. Far more commonly, however, Grubbs would invent excuses for delaying payment, then ultimately cut off contact with the investor.

22. Grubbs knew or was substantially certain that his actions toward each Plaintiff, would cause the Plaintiff severe injury, and he took those actions willfully and maliciously and without just cause or excuse.

23. Each transaction between Grubbs and a Plaintiff constituted the illegal sale of a security under state law. Grubbs' debt to each Plaintiff is for and arises from common law fraud, deceit, and manipulation in connection with the purchase or sale of a security.

24. Each time Grubbs incurred a debt to a Plaintiff, he did not intend or plan to repay it and knew that he never would pay it. No reasonable person, knowing the facts and situation at at time the debt was incurred, would have thought or believed that the debt would ever be repaid.

25. Grubbs fraudulently and wrongfully took the property of each Plaintiff with intent to convert such property to his own use without the Plaintiff's consent.

### Count I: Non-Dischargeability Under 11 U.S.C. § 523(a)(2)

26. Paragraphs 1-25 are incorporated as though fully restated herein.

27. Debtor used false pretenses, false representations, and fraud to obtain money and property from each Plaintiff.

28. Each Plaintiff reasonably and justifiably relied on Debtor's false representations and other misconduct in lending money to Debtor.

8

29. In the absence of Debtor's false representations and other misconduct, none of the Plaintiffs would have loaned money to Debtor.

30. Debtor's conduct has rendered his debt to each Plaintiff non-dischargeable pursuant to 11 U.S.C. § 523(a)(2).

### Count II: Non-Dischargeability Under Section 523(a)(4)

31. Paragraphs 1-30 are incorporated as though fully restated herein.

32. Debtor engaged in fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

33. In the absence of said fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, none of the Plaintiffs would have loaned money to Debtor.

34. Debtor's conduct has rendered his debt to each Plaintiff non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

### Count III: Non-Dischargeability Under Section 523(a)(6)

35. Paragraphs 1-34 are incorporated as though fully restated herein.

36. Debtor, willfully and maliciously and without just cause or excuse, took harmful actions toward each Plaintiff that he knew or was substantially certain would cause severe injury.

37. Debtor's conduct has rendered his debt to each Plaintiff non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

### Count IV: Non-Dischargeability Under Section 523(a)(19)

38. Paragraphs 1-37 are incorporated as though fully restated herein.

39. Grubbs' debt to each Plaintiff is for and arises from common law fraud, deceit, and manipulation in connection with the purchase or sale of a security.

40. Debtor's conduct has rendered his debt to each Plaintiff non-dischargeable pursuant to 11 U.S.C. § 523(a)(19).

## Prayer for Relief

Wherefore, Plaintiffs pray that this Court enter an order and judgment determining that Debtor's debt to each Plaintiff is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2), 523(a)(4), 523(a)(6), and/or 523(a)(19), and grant Plaintiffs all other just and appropriate relief.

Respectfully submitted,

/s/ Matthew Foster
Matthew Foster (16400-49)

Foster Law LLC
9511 Angola Court, Suite 310
Indianapolis IN 46268
matt@fosterlaw.llc
317-399-4686 (fax NA)

Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 23, 2024 a true copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties through the Court's Electronic Case Filing System. Parties may access this filing through such system.

/s/ Matthew Foster
Attorney for Plaintiffs